Wanda L. QUIRK, Appellant,

v.

PREMIUM HOMES, INC., and Division of Employment Security, Respondents.

No. ED 74690.

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 24, 1999.

Stacey A. Meyers, St. Louis, for appellant.

Larry R. Ruhmann, St. Louis, for respondent.

CRAHAN, Judge.

Wanda Quirk ("Employee") appeals the decision of the Labor and Industrial Relations Commission ("Commission") that she was disqualified from waiting week credit or benefits on the ground that she had left work voluntarily without good cause attributable to such work or to her employer pursuant to section 288.050.1. RSMo Cum.Supp.1997.[1] Employee claims the Commission erred in failing to consider the threshold issue of whether the position she left after three days of employment at Premium Homes, Inc. ("Employer") was "suitable employment" as required by section 288.051.1.(1)(c). We agree and reverse and remand with directions.

■ Before turning to the merits of the appeal, we must first resolve a procedural issue. Employee filed a motion seeking an order of this court requiring the Commission to supplement the record with a document from its file that she claims was, by law, material to the issue presented below and on appeal, even if it was not considered by the Commission in reaching its decision. We ordered the Commission to file the document in a supplemental legal file and further ordered the parties to brief the issue.

The issue arises due to the following undisputed facts: Employee was receiving unemployment compensation when she accepted the job with Employer. She voluntarily resigned that position after just three days at work. The document at issue is the Commission's prior determination that Employee was eligible for unemployment compensation, which also reflects a Commission determination that her prior employer was U.S. Title Guaranty and that she earned a total of $41,782.71 in the last four quarters prior to her unemployment. Employee does not dispute that neither the Commission nor the Appeals Referee ever indicated on the record that this document was considered in deciding her case. However, Employee maintains that, given the undisputed facts, the Commission and the Appeals Referee were obliged by law to do so. Therefore, Employee argues, the document may properly be considered on appeal. We agree.

Section 288.050.1. provides:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer; *except that the claimant shall not be disqualified:*

. . . .

(c) If the deputy finds the individual quit work, which would have been determined not suitable in accordance with paragraph (a) and (b) of subdivision (3) of this subsection, *within twenty-eight*

---

1. All statutory references are to the 1997 Cumulative Supplement unless otherwise indicated.

*calendar days of the first day worked;* (emphasis added)

. . . .

Section 288.050.1.(3)(a) provides, in relevant part:

(a) In determining whether or not any work is suitable for an individual, the division shall consider, among other factors, and in addition to those enumerated in paragraph (b) of this subdivision,[2] the degree of risk involved to the individual's health, safety and morals, the individual's physical fitness and prior training, the individual's experience *and prior earnings,* the individual's length of unemployment, the individual's prospects of securing work in the individual's customary occupation, the distance of available work from the individual's residence and the individual's prospect of obtaining local work; except that, if an individual has moved . . . . (emphasis added).

Section 288.190.2. provides, in relevant part:

A full and complete record shall be kept of all proceedings in connection with a disputed determination, referred claim, or petition for reassessment. The appeals tribunal shall include in the record and consider as evidence all records of the division that are material to the issues.

■ It is clear from the provisions quoted above that, before reaching the "just cause" determination, the Commission is first required to consider and decide a threshold issue with respect to claimants who quit their jobs within twenty-eight calendar days of the first day worked. In such cases, the Commission must first decide whether the work would have been determined not suitable in accordance with section 288.050.1.(3)(a) and (b). Among the factors the Commission must consider pursuant to section 288.050.1.(3)(a) is the claimant's prior earnings history. The

Commission's prior determination of eligibility for benefits, which reflects the Commission's prior findings with respect to Employee's earnings for the four quarters preceding her initial period of unemployment, is thus a "record of the division" which is "material to the issues." Therefore, it is a document the appeals tribunal was required to include in the record. It also constitutes a "relevant paper" as well as a relevant "ruling" or "decision" "issued by the agency" which is required to be included in the record pursuant to Rule 100.02. Accordingly, we hold that the Commission's prior determination of Employee's eligibility for unemployment benefits is properly before us and should be considered on appeal.

The reason the document was neither included in the record initially filed nor considered by the Appeals Referee or the Commission is that the Appeals Referee was apparently unfamiliar with the requirements of section 288.050.1.(1)(c) pertaining to persons who quit work within twenty eight days. At the outset of the hearing, at which Employee, who was then unrepresented by counsel, was the only witness, the Appeals Referee announced the issues to be decided as follows: "I will decide if the claimant left work voluntarily or was discharged; if the claimant left work voluntarily if it was for good cause attributable to the work or not; if the claimant was discharged if it was for misconduct or not."

■ The Appeals Referee then proceeded to question Employee, quickly eliciting the fact that she quit the job with Employer after working only three days. Pursuant to section 288.050.1.(1)(c), the Appeals Referee should then have amended the issues for decision to include a determination of whether the work would have been considered not suitable according to the criteria set forth in section 288.050.1.(3)(a)

---

**2.** Section 288.050.1.(3)(b) is clearly inapplicable to the facts of this case and need not be

reproduced here.

and (b). However, instead of eliciting testimony specifically aimed at these criteria, the Appeals Referee instead focused solely on the issues she announced at the outset of the hearing.[3] Under the statute, if a claimant quits a job that would have been considered not suitable within twenty eight days of starting work, it is irrelevant whether the claimant had "just cause attributable to her work."

Ordinarily we would be disposed to remand this case to the Commission for a determination of whether Employee's job at Premium Homes would have been determined not to be suitable under the statutory criteria set forth in section 288.051.1.(3)(a) and (b). In the interest of judicial economy, however, we decline to do so because the facts which are already of record would preclude a finding that the job was suitable.

Employee's uncontradicted testimony, together with the Commission's own records, establish that on February 8, 1998, Employee was approved for unemployment benefits by the Missouri Division of Employment Security in the amount of $205.00 a week, with a maximum of $5,330.00. This determination was based on a finding that Employee had earned a total of $41,782.71 in her last four quarters of employment as an office manager at U.S. Title Guaranty. Employee had worked as an office manager for another company for six years prior to that.

Exactly one month after being approved for unemployment compensation and "desperate to get a job," Employee accepted a position with Premium Homes as an office manager. Employee understood from her interview with one of the owners, Mrs. Kaufer, that she would be making about $26,000.00 per year. Employee explained to Mrs. Kaufer that she was taking a big cut in pay from her previous job but she would do it because of the overtime. She was assured there would be a lot of overtime.

Employee began work on Monday, March 8, 1998. Her supervisor was the other owner, Mr. Kaufer. The office was in a display home. Only one other employee worked in the office besides the owners. Employee soon discovered she had no idea how to operate the computer system. Neither did the owners nor anyone else she asked. No one knew where the manual was. Employee was unable to get anyone to explain the established office procedures to her. According to Employee, the owners thought she could just walk in and pick up where the previous office manager left off without being shown anything.

On her second day of employment, Employee learned that she would be paid a salary and not on an hourly basis, so there would be no extra payment for overtime. Employee worked one more day and called Mrs. Kaufer the following morning and quit. When she received her final check, she realized that they were only paying her at a rate of $22,800.00, not $26,000.00 as she had been told.

Turning to the criteria for determining whether or not any work is suitable set forth in section 288.050.1.(3)(a), the first factor, the degree of risk involved to the individual's health, safety or morals, is not implicated. Nor is Employee's physical fitness at issue. Employee's prior training did not prepare her to operate the computer system utilized by the business, despite her long experience as an office manager. Employee's prior earnings were well in excess of what Employer told her she would make and nearly twice as much on an annual basis as was reflected in the check she received from Employer.[4]

---

3. Even if just cause were the proper focus of the Appeals Referee's inquiry, we note that the transcript reads more like cross-examination than an unbiased attempt to elicit all of the relevant facts.

4. Although the Commission may be correct that in evaluating whether Employee had just cause to terminate her employment, the proper comparison would be to what Employee thought she was making, in evaluating the

Moreover, contrary to what Employee had been led to believe, there was no prospect of making up the difference or any portion of it through overtime. The length of Employee's unemployment, just one month, weighs heavily in Employee's favor. Employee diligently sought a new job and showed a willingness to accept a lesser paying job and to try to make up the difference by working overtime. She cannot be expected to accept such a large pay cut after such a minimal period in which to search for a replacement job. Employee's prospect of securing work comparable to her prior employment was not explored on the record.

Although we believe the foregoing factors standing alone would be sufficient to support a determination that the job Employee quit was not suitable, we note that the factors set forth in the statute are not exclusive. Here, there is another factor that, taken with those discussed above, compels a finding that the job was unsuitable. Employer was shown to be dishonest. After Employee explained to Employer that the agreed compensation was far less than she had been making but she would take the job because of the overtime, Employer assured her that there would be a lot of overtime. Thus, Employer tacitly misrepresented to Employee that overtime would be a way to make up the difference when Employer knew full well that overtime would not be a way to make up for Employee's diminution in compensation. Employer's dishonesty is further confirmed by the fact that Employee's check did not reflect what she was told she would be paid. As Employee testified "So, you know, everything – every time they would say something it never came out to what it was supposed to be."

Employee cannot reasonably be expected to remain in a job accepted in despera-tion after such a short time when she learns that the new employer has been dishonest with her and tricked her into believing she can make up the loss in earnings from her old job through overtime. Employer's dishonesty about this crucial fact, standing alone or taken together with the other factors discussed above, compels a finding that the job was unsuitable.

For the foregoing reasons, we reverse the Commission's decision, and remand with directions to reinstate Employee's unemployment benefits.[5]

JAMES R. DOWD, P.J., Concurs.

RICHARD B. TEITELMAN, J., Concurs.

---

suitability of the job, the proper comparison is what she made before compared with what she actually was being paid on the job she quit.

**5.** We would be remiss if we failed to make public our appreciation for the well written briefs, superior arguments and, above all, exemplary courtesy and professionalism exhibited by counsel for both parties.